**THE SIMON LAW GROUP, LLP**
Robert T. Simon, Esq. (SBN 238095)
Greg A. Jackson, Esq. (SBN 318829)
Mikaela S. Dixon, Esq. (SBN 340437)
2916 W. 164th Street, Torrance, CA 90504
Telephone: (310) 914-5400 / Facsimile: (310) 914-5401
E-mail: teamoc@justiceteam.com

Attorneys for Plaintiffs Francisco Longoria,
Jonathan Longoria, and Martin Daniel Rascon

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| **FRANCISCO LONGORIA; JONATHAN LONGORIA; and MARTIN DANIEL RASCON;**<br><br>    Plaintiffs,<br><br>    v.<br><br>**UNITED STATES OF AMERICA; P.K., an individual; W.W., an individual; S.T., an individual; J.C., an individual; and DOES 1 through 10, inclusive;**<br><br>    Defendants. | Case No.: 5:26-cv-4149<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. Fourth Amendment Unreasonable Seizure (*Bivens*)<br>2. Fourth Amendment Excessive/Unreasonable Force/Invasion of Bodily Integrity (*Bivens*)<br>3. Assault (FTCA)<br>4. Battery (FTCA)<br>5. False Arrest/False Imprisonment (FTCA)<br>6. Malicious Prosecution (FTCA)<br>7. Abuse of Process (FTCA)<br>8. Intentional Infliction of Emotional Distress (FTCA)<br>9. Negligence (FTCA)<br>10. California Bane Act – Cal. Civ. Code § 52.1 / Article I, Section 13 of the California Constitution (FTCA)<br>11. California Ralph Act – Cal. Civ. Code § 51.7 (FTCA) |

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

COMPLAINT FOR DAMAGES

**JURY TRIAL DEMANDED**
(On *Bivens*, Bane Act, and Ralph Act Claims)

**COMES NOW**, Plaintiffs FRANCISCO LONGORIA, JONATHAN LONGORIA, and MARTIN DANIEL RASCON (collectively "Plaintiffs"), by and through their counsel of record, The Simon Law Group, LLP, and for causes of action against Defendants UNITED STATES OF AMERICA ("United States"), Immigrations and Customs Enforcement ("ICE") Officer P.K. whose true and full name and identity is currently unknown, ICE Officer W.W. whose true and full name and identity is currently unknown, Customs and Border Protection ("CBP") Officer S.T. whose true and full name and identity is currently unknown, and CBP Officer J.C. whose true and full name and identity is currently unknown (collectively "Defendants") and hereby allege and complain as follows:

## JURISDICTION AND VENUE

1. This Complaint is for damages based on tort violations committed by employees of the United States acting under color of law and within the scope of their employment, and in violation of the Federal Tort Claims Act (hereinafter referred to as "FTCA") and California law.

2. This Court has exclusive jurisdiction over the FTCA counts pursuant to 28 U.S.C. § 1346(b)(1). The United States has waived sovereign immunity for tortious acts of federal employees acting within the scope of their employment, measured by California law under 28 U.S.C. §§ 2671–2680.

3. This Court has federal question jurisdiction over the constitutional tort counts under 28 U.S.C. § 1331. Plaintiffs assert claims directly under the Fourth Amendment to the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

4. This Court has supplemental jurisdiction over the California Bane Act (Cal. Civ. Code § 52.1) and Ralph Act (Cal. Civ. Code § 51.7) counts under 28

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

U.S.C. § 1367(a), as those claims form part of the same case or controversy as the federal claims.

5.    Venue is proper in the United States District Court for the Central District of California, Eastern Division, pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(e)(1)(B), and 1391(e)(1)(C), and 28 U.S.C. § 1402(b), because a substantial part of the events giving rise to the claims occurred in San Bernardino County, California, specifically at the intersection of West Base Line Street and Acacia Avenue, San Bernardino, California, and Plaintiffs reside in San Bernardino, California.

6.    Plaintiffs exhausted the administrative remedies prescribed by 28 U.S.C. § 2675 by timely presenting the FTCA claims to the appropriate agencies of the United States on November 24, 2025. No written denial has been received from any agency.

7.    More than six (6) months have elapsed since presentment without the agency issuing a final disposition of the claims. Accordingly, Plaintiffs are authorized to deem the claims finally denied and to commence this civil action pursuant to 28 U.S.C. § 2675(a).

8.    The intentional tort exception to sovereign immunity under 28 U.S.C. § 2680(h) expressly preserves FTCA liability for acts of assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution committed by investigative or law-enforcement officers of the United States, including officers of ICE and CBP. All FTCA intentional-tort counts herein fall within this section.

## PARTIES

9.    Plaintiff FRANCISCO LONGORIA (hereinafter referred to as "Francisco") is a natural person who, at all times complained of in this action, resided in the County of San Bernardino, State of California. Francisco was the driver and registered owner of a 2001 GMC Sierra 1500 Extended Cab pickup truck during the events that give rise to this action. Francisco has no prior criminal history whatsoever. At all times complained of in this action, Francisco lived in his own

home that he co-owns with his wife, with his name on the real property, and had a valid California driver's license.

10.     Plaintiff JONATHAN LONGORIA (hereinafter referred to as "Jonathan") is a natural person who, at all times complained of in this action, resided in the County of San Bernardino, State of California. Johnathan is Francisco's son, and was the front-seat passenger in Francisco's truck during the events that give rise to this action. Jonathan has no prior criminal history whatsoever.

11.     Plaintiff MARTIN DANIEL RASCON (hereinafter referred to as "Daniel") is a natural person who, at all times complained of in this action, resided in the County of San Bernardino, State of California. Daniel was the rear-seat passenger in Francisco's truck during the events that give rise to this action. Daniel has no prior criminal history whatsoever.

12.     Defendant UNITED STATES OF AMERICA (hereinafter referred to as "United States") is a sovereign nation that has waived its sovereign immunity for the claims that Plaintiffs assert against it. United States is sued solely in its capacity as the statutory defendant under the FTCA, 28 U.S.C. § 1346(b), and as an appropriate defendant for the California state civil-rights counts to the extent a private person would be liable under California law. At all times complained of in this action, Defendant United States was the government entity that controlled, directed, and otherwise oversaw United States Immigration and Customs Enforcement ("ICE") and United States Customs and Border Protection ("CBP") and employed the law enforcement officers whose true names are unknown but are referred to in this Complaint as ICE Enforcement and Removal Operations ("ERO") Officer P.K., ICE ERO Officer W.W., CBP Officer S.T., CBP Officer J.C., and other involved ICE, CBP, and Department of Homeland Security ("DHS") officers, each of whom were acting under color of law and within the course and scope of their employment with respect to the conduct about which Plaintiffs complain.

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

4

COMPLAINT FOR DAMAGES

13.     Defendant P.K. is an individual, an ICE ERO officer, whose true full name is presently unknown. P.K. is identified in these proceedings by initials as stated in the administrative claims filed by Plaintiffs on November 24, 2025, and in the criminal complaint and affidavit filed by the United States against Francisco on August 19, 2025. P.K. is sued in his individual capacity for the *Bivens*, Bane Act, and Ralph Act counts. Plaintiffs will seek leave to amend to insert P.K.'s true name when it has been ascertained through discovery. P.K. is also designated herein as DOE 1.

14.     Defendant W.W. is an individual, an ICE ERO officer, whose true full name is presently unknown. W.W. is identified in these proceedings by initials as stated in the administrative claims filed by Plaintiffs on November 24, 2025, and in the criminal complaint and affidavit filed by the United States against Francisco on August 19, 2025. W.W. is sued in his individual capacity for the *Bivens*, Bane Act, and Ralph Act counts. Plaintiffs will seek leave to amend to insert W.W.'s true name when it has been ascertained through discovery. W.W. is also designated herein as DOE 2.

15.     Defendant S.T. is an individual, a CBP officer, whose true full name is presently unknown. S.T. is identified in these proceedings by initials as stated in the administrative claims filed by Plaintiffs on November 24, 2025, and in the criminal complaint and affidavit filed by the United States against Francisco on August 19, 2025. S.T. is sued in his individual capacity for the *Bivens*, Bane Act, and Ralph Act counts. Plaintiffs will seek leave to amend to insert S.T.'s true name when it has been ascertained through discovery. S.T. is also designated herein as DOE 3.

16.     Defendant J.C. is an individual, a CBP officer, whose true full name is presently unknown. J.C. is identified in these proceedings by initials as stated in the administrative claims filed by Plaintiffs on November 24, 2025, and in the criminal complaint and affidavit filed by the United States against Francisco on August 19, 2025. J.C. is sued in his individual capacity for the *Bivens*, Bane Act, and Ralph Act

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

counts. Plaintiffs will seek leave to amend to insert J.C.'s true name when it has been ascertained through discovery. J.C. is also designated herein as DOE 4.

17.    Defendant DOES 1 through 10 are additional individuals whose identities are currently unknown to Plaintiffs, who participated in or ratified the unlawful conduct described herein. Plaintiffs will seek leave to amend to insert the true names of Doe Defendants when ascertained through discovery.

18.    At all times relevant herein, Defendants P.K., W.W., S.T., J.C., and DOES 1 through 10, inclusive, were employees, officers, and agents of the United States acting under color of federal law and within the course and scope of their employment with ICE ERO and CBP, respectively. Their acts and omissions are attributable to the United States for purposes of the FTCA. For purposes of the *Bivens* and state civil-rights counts, each individual defendant acted under color of federal law and in his individual capacity.

## GENERAL FACTS REGARDING CBP USE OF FORCE POLICIES

19.    Following mounting allegations of unwarranted violence and shootings by CBP Officers/Agents between 2010 and 2012, Congress ordered an investigation of CBP Use of Force policies and practices. This investigation included an internal assessment by CBP, a review by the Office of Inspector General (hereinafter referred to as "OIG"), and an independent evaluation by the Police Executive Research Forum (hereinafter referred to as "PERF"). PERF is an independent research organization founded in 1976 that focuses on critical issues in policing, such as use of force. The investigations and evaluations were completed in 2013.

20.    PERF's investigation, titled U.S. Customs and Border Protection Use of Force Review: Cases and Policies concluded in February 2013. PERF's investigation found significant concerns involving CBP Officers/Agents, including but not limited to conclusions that CBP Officers/Agents repeatedly "intentionally put themselves into the exit path of" vehicles attempting to flee, "thereby exposing themselves to additional risk and creating justification for the use of deadly force."[1]

[1] https://www.cbp.gov/sites/default/files/documents/PERFReport.pdf

COMPLAINT FOR DAMAGES

21.     In addition to CBP Officers/Agents manufacturing justification to use deadly force, even in 2013 it was already widespread policy amongst law enforcement agencies not to shoot at a moving vehicle and thereby potentially create an uncontrolled missile weighing several thousand pounds that endangers the public and the Officers/Agents. As PERF noted, "it appears that CBP practice allows shooting at the driver of any suspect vehicle that comes in the direction of agents…it should be recognized that a ½ ounce (200 grain) bullet is unlikely to stop a 4,000 pound moving vehicle, and if the driver of the approaching vehicle is disabled by a bullet, the vehicle will become a totally unguided threat. Obviously, shooting at a moving vehicle can pose a risk to bystanders including other agents."[2]

22.     PERF further concluded that "[t]he cases suggest that some of the shots at suspect vehicles are taken out of frustration when agents who are on foot have no other way of detaining suspects who are fleeing in a vehicle. Most reviewed cases involved non-violent suspects who posed no threat other than a moving vehicle. There is little doubt that the safest course for an agent faced with an oncoming vehicle is to get out of the way of the vehicle."[3]

23.     Ultimately, PERF recommended that CBP Use of Force Policy should explicitly state that "[a]gents shall not discharge their firearms at or from a moving vehicle unless deadly force is being used against the police officer or another person present, by means other than a moving vehicle" and "[o]fficers/agents should avoid standing directly in front of, behind, or beside a suspect vehicle and should not intentionally use their body to block the suspect vehicle. The likelihood of injury to the officer/agent substantially increases when using these dangerous and rarely effective tactics. **Officers/agents should strive to move out of the way rather than into the path of vehicles**."[4]

24.     Then-Chief of CBP Michael Fisher subsequently issued a new directive titled "Use of Safe Tactics and Techniques" on March 7, 2014, directing that

---

[2] *Id.*
[3] *Id.*
[4] *Id.* (bold in original)

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

"agents shall not discharge their firearms at a moving vehicle unless the agent has a reasonable belief, based on the totality of the circumstances that deadly force is being used against an agent or another person present; **such deadly force** may include a moving vehicle aimed at agents or others present, but **would not include a moving vehicle merely fleeing from agents**. Further, **agents should not place themselves in the path of a moving vehicle or use their body to block a vehicle's path**."[5]

25.     This policy has been enshrined within CBP's Use of Force Policy since 2014, and has been in effect at all times complained of in this action. The current active CBP Use of Force Policy includes directives that "[a]uthorized Officers/Agents should avoid standing directly in front of or behind a subject vehicle. Officers/agents should not place themselves in the path of a moving vehicle or use their body to block a vehicle's path," "[a]uthorized Officers/agents should avoid intentionally and unreasonably placing themselves in positions in which they have no alternative to using deadly force," "[d]eadly force shall not be used solely to prevent the escape of a fleeing subject," and "[a]uthorized Officers/Agents shall not discharge their firearms at the operator of a moving vehicle" where the "moving vehicle [is] merely fleeing from officers/agents…"[6]

26.     At all times complained of herein, Defendants, and each of them, violated each of these Use of Force directives by unreasonably using deadly force against Plaintiffs who posed no threat to either the Defendants or the public.

## GENERAL FACTS REGARDING ICE POLICIES

27.     Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

28.     ICE and CBP began a mass-deportation scheme in California in the Spring of 2025. Deputy White House Chief of Staff Stephen Miller and Homeland Security Secretary Kristi Noem, acting under color of law and in the course and

---

[5] https://www.cbp.gov/sites/default/files/documents/Use%20of%20Safe%20Tactics%20and%20Techniques.pdf (emphasis added)
[6] https://www.cbp.gov/sites/default/files/2024-09/exhibit_09_-_cbp_use_of_force_policy_final_jan_2021.pdf

COMPLAINT FOR DAMAGES

scope of their employment with Defendant United States, thereafter issued demands in May, 2025 that immigration agents seek to arrest three thousand (3,000) people every day.[7] This subsequently lead to mass arrests and detentions by ICE and CBP, including numerous arrests and detentions of U.S. Citizens of Hispanic and/or Latino race and/or ethnicity, where in many cases the ICE and/or CBP agents disregarded the U.S. Citizens' identification.

29.    This high rate of arrests and detentions created significant fear in the community, both among immigrants and non-immigrants in the Hispanic and/or Latino community, that individuals could be seized by ICE and/or CBP agents in plain clothes, masks, sunglasses, and baseball caps, and be thrown into unmarked vans simply based on their apparent race or ethnicity, where they would then disappear for days, weeks, or months at a time.

30.    As ICE/CBP agents refused to wear uniforms, use properly marked vehicles identifying them as law enforcement, or identify themselves; instead using unmarked vehicles while wearing plain clothes including hoody jackets, jeans, sunglasses, masks, and baseball caps to conceal their identities while refusing to provide any identification, bad-faith actors capitalized on this and began to target immigrant communities.

31.    This subsequently lead to wide-spread reporting of ICE impersonators attacking and harming individuals based on perceived Hispanic and/or Latino race and/or ethnicity. As a non-exhaustive list of examples:

a.    Three incidents in February, 2025, where individuals impersonating ICE agents targeted members of the Los Angeles Unified School District community, including one individual who tried to stop a school bus with a fake badge.[8]

---

[7] https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller
[8] https://www.nbclosangeles.com/news/local/ice-impersonators-target-lausd-community/3626973/

COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

b.      Two men who repeatedly wore fake tactical vests with 'POLICE' and 'ICE' patches while in plain clothes, visiting several businesses in Fresno County, California, in 2025.[9]

d.      A man wearing a jacket with a label on the back that said "ICE Immigration" intimidating members of the public at a taqueria in Newbury Park, California in March of 2025.[10]

c.      A man arrested in Huntington Park, California, in June of 2025, for impersonating a CBP agent. He was arrested in an unmarked vehicle that had blue and red LED lights on the interior dashboard, police-style radios, multiple passports not registered under his name, and documents bearing the letterhead of Homeland Security Investigations and Customs and Border Protection.[11]

d.      Multiple masked men impersonating ICE agents detained the godson of a Los Angeles County Board of Supervisors staffer in June of 2025, telling him, "nice truck for someone with that surname."[12]

32.     The phenomenon described above is and was widespread across the United States where there is/was ICE activity, as ICE Officers/Agents have refused to wear any identifiable uniform or identify themselves before seizing alleged immigrants and throwing them into unmarked vehicles.

33.     The phenomenon described above is and was so widespread, and compounded by the actions of ICE Officers/Agents, that on October 17, 2025, the Federal Bureau of Investigations ("FBI") issued a Public Safety Awareness ("PSA") Report to federal agencies, including ICE and CBP, specifically warning that criminal actors were impersonating ICE agents in order to commit violent crimes. The PSA noted specific instances of this conduct that had occurred, including robberies, kidnapping, assault, sexual assault, and threats by individuals

---

[9]  https://gvwire.com/2025/06/27/alleged-fake-ice-agents-charged-fresno-court-date-set/
[10] https://www.latimes.com/california/story/2025-03-20/ice-impersonators-scams-target-immigrants-tips-to-protect-yourself
[11] https://ktla.com/news/local-news/l-a-man-arrested-in-huntington-park-for-possibly-impersonating-federal-agent/
[12] https://www.independent.co.uk/news/world/americas/us-politics/ice-impersonators-los-angeles-protests-b2773448.html

10

COMPLAINT FOR DAMAGES

impersonating ICE agents by simply wearing plain clothes and an 'ICE' or 'POLICE ICE' badge/patch or jacket.[13]

34.     These widespread incidents caused fear in the Hispanic/Latino and immigrant communities as ICE agents continuously wore plain clothes, masks, and refused to identify themselves. The FBI PSA specifically advised that law enforcement personnel adequately identify themselves during operations and cooperate with individuals who request further identification, such as calling their local precinct to verify the officer's identity, yet ICE and CBP Officers/Agents refused to do so.

35.     On June 20, 2025, the lawsuit entitled *Pedro Vasquez Perdomo v. Kristi Noem*, Case No. 2:25-cv-05605 (C.D. Cal.) (hereinafter referred to as "*Perdomo v. Noem*") was filed, alleging ICE and CBP agents of violating the rights of individuals under the United States Constitution without reasonable suspicion or probable cause, based on perceived ethnicity, only arresting Hispanic individuals (including U.S. Citizens), and using disproportionate force in carrying out immigration enforcement activities. The lawsuit sought, among other objectives, a Temporary Restraining Order ("TRO") enjoining Defendants from these activities.

36.     U.S. District Judge Maame Ewusi-Mensah Frimpong concluded in an Order issued on July 11, 2025, that Defendants "have a policy and practice of effectuating warrantless arrests without making an individualized flight risk determination…a policy and practice of not identifying themselves or explaining the basis for an arrest upon taking someone into custody…[and] Agents and officers often show up masked, without any visible badges or insignia indicating what agency they work for, and have refused to identify themselves when asked."[14]

37.     The Court ultimately concluded in that same Order that Plaintiffs were "likely to succeed in proving that the federal government is indeed conducting

THE SIMON LAW GROUP, LLP

2916 W. 164th Street
Torrance, CA 90504

Tel: 310-914-5400 – Fax: 310-914-5401

---

[13] https://www.documentcloud.org/documents/26364028-20251016-fbi-alert-re-ice-impersonators/
[14] *Perdomo v. Noem*, Case No. 2:25-cv-05605-MEMF-SP, Dkt. No. 87, at 7:4-8.

COMPLAINT FOR DAMAGES

roving patrols", including mass arrests and detentions, "without reasonable suspicion and denying access to lawyers."[15]

38.     The TRO issued by the Court included the specific Orders that Defendants, including ICE and CBP, "shall be enjoined from conducting detentive stops in this District unless the agent or officer has reasonable suspicion that the person to be stopped is within the United States in violation of U.S. immigration law," and that Defendants, including ICE and CBP, "may not rely solely on the [identified] factors…alone or in combination, to form reasonable suspicion for a detentive stop," with said factors listed as 1) "[a]pparent race or ethnicity," 2) "[s]peaking Spanish or speaking English with an accent," 3) "[p]resence at a particular location (e.g. bus stop, car wash, tow yard, day laborer pick up site, agricultural site, etc.," or 4) "[t]he type of work one does."[16] In simple terms, ICE and CBP were not permitted to target California residents solely based on race, language, and/or place of work.

39.     Following an appeal by Defendants, a three-judge panel of The United States Court of Appeals for the Ninth Circuit ultimately issued a ruling on August 1, 2025 that upheld virtually all of the TRO at issue.[17]

40.     In its ruling, the Court of Appeals concluded that "[r]easonable suspicion cannot be based on 'generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population'" as apparent race and ethnicity are a "characteristic common to both legal and illegal immigrants and does little to arouse reasonable suspicion."[18] The Court further noted that the Central District's demographics of being approximately 47% Hispanic or Latino further underscored the "limited probative value" of apparent Hispanic or Latino race or ethnicity.[19]

41.     Accordingly, the TRO issued by the District Court and upheld by the Court of Appeals for the Ninth Circuit enjoining Defendants United States, ICE,

---

[15] *Id.* at 2:16-22.
[16] *Id.* at 50:6-18.
[17] *Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025)
[18] *Id.* at 682-83.
[19] *Id.*

12

COMPLAINT FOR DAMAGES

CBP, and all other named defendants, thereby including Defendants P.K., W.W., S.T., and J.C in this action, from conducting detentive stops based solely or by combination of apparent race/ethnicity, speaking Spanish or English with an accent, presence at a particular location, or the type of work being done, remained in place at all times relevant to this Complaint and action.

42.    Furthermore, Defendants United States, P.K., W.W., S.T., and J.C. each knowingly, intentionally, maliciously, and oppressively violated the TRO that had been issued by the District Court and upheld by the Court of Appeals for the Ninth Circuit by performing the unlawful search, seizure, assault, battery, and other conduct against Plaintiffs as described in this Complaint.

43.    The Supreme Court of the United States issued an unsigned order granting the Solicitor General's request for a stay, lifting the TRO restrictions on or about September 8, 2025. In a concurring opinion on September 8, 2025, Justice Brett Kavanaugh opined that an officer can develop reasonable suspicion through evaluating four factors, considering an "extremely high number and percentage of illegal immigrants in the Los Angeles area; that those individuals tend to gather in certain locations to seek daily work; that those individuals often work in certain kinds of jobs…and that many of those illegally in the Los Angeles area…do not speak much English."[20]

44.    Notwithstanding the four factor evaluation in Justice Kavanaugh's concurrence, Justice Kavanaugh reiterated in the same opinion that "[t]o be clear, **apparent ethnicity alone cannot furnish reasonable suspicion."**[21] Thus, even if Defendants in this action take the position that the TRO was subsequently lifted, the only factor that Defendants considered when conducting their unlawful detention of Plaintiffs was Plaintiffs' apparent race/ethnicity, which is in violation of Justice Kavanaugh's four-factor evaluation.

/ / /

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

[20] *Pedro Vasquez Perdomo v. Kristi Noem*, 606 U.S. ___, slip op. at 5–6 (Sep. 8, 2025) (Kavanaugh, J., concurring)
[21] *Id.* (emphasis added). *See also Trump v. Illinois*, 607 U.S. ___, (Justice Kavanaugh concurring in the opinion, that CBP/ICE officers "must not make interior immigration stops or arrests based on race or ethnicity" at fn.4)

COMPLAINT FOR DAMAGES

**FACTUAL ALLEGATIONS**
**THE UNLAWFUL STOP, SEIZURE, BOX-IN AND USE OF FORCE —**
**AUGUST 16, 2025**

45.     Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

46.     On Saturday, August 16, 2025, at approximately 8:40 a.m., Francisco Longoria was driving his 2001 GMC Sierra 1500 Extended Cab pickup truck with his son Jonathan Longoria in the front passenger seat and Martin Daniel Rascon in the rear passenger seat. The truck was traveling at or near the intersection of West Base Line Street and Acacia Avenue, San Bernardino, California.

47.     Defendants P.K., W.W., S.T., and J.C. were operating two unmarked government vehicles with no exterior law-enforcement markings, no signage, no hazard lights, and no roof light bars. The four officers wore face masks, sunglasses, baseball caps, and plain clothes in order to conceal their identities. The four officers were not wearing any formal uniforms identifying themselves as CBP and/or ICE agents.

48.     Defendants P.K. and W.W. were driving in one vehicle, behind Francisco. Defendants S.T. and J.C. were driving in a second vehicle, slightly behind and parallel to Francisco.

49.     Without warning, the four officers swerved their vehicles to box in and block Francisco's truck in the middle of the intersection. The vehicles did not have any sirens or mounted lights activated. The four officers exited their vehicles with guns drawn and pointed directly at Francisco and his passengers, and approached his truck. Defendants J.C. and W.W. positioned themselves on the driver's side of the truck; Defendants S.T. and P.K. positioned themselves on the passenger side.

50.     Jonathan and Daniel repeatedly asked Defendants P.K., W.W., S.T., and J.C. to identify who they were, to provide their identification, and to state what they wanted. In violation of ICE and CBP policy, the officers refused to speak or answer any questions, and instead they immediately and aggressively began pulling

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

on door handles and pounding on the windows of the truck. This placed Plaintiffs in imminent fear of being harmed, as Plaintiffs had no way to know what Defendants wanted or who they actually were.

51.     Suddenly and without warning, and only seconds after approaching Francisco's vehicle, Defendant J.C. broke the driver's side window of Francisco's vehicle, punched Francisco in the head, and began aggressively reaching inside the vehicle.

52.     At the same time, Defendant P.K. broke the front passenger window of Francisco's vehicle, showering Jonathan with broken glass, and also began aggressively reaching inside of the vehicle, placing Jonathan and Daniel in immediate fear for their safety.

53.     Terrified for their lives after four armed, masked men in plain clothes, masks, sunglasses, and baseball caps to conceal their identities, who had blocked in Francisco's vehicle, refused to identify themselves akin to the many reported cases of ICE impersonators, broken the truck windows and struck Francisco, and appeared to be kidnapping them, Francisco drove away straight ahead down the street.

54.     In direct violation of CBP's Use of Force Policy as described in this Complaint, after Francisco's truck had already gone past Defendants, Defendant S.T. then attempted to kill Francisco, Jonathan, and Daniel by firing multiple gunshots from behind directly into the rear passenger side of Francisco's vehicle, and in fact struck Francisco's vehicle with several bullets. Cell phone videos from the interior of Francisco's vehicle, as well as surveillance footage from a nearby business, clearly demonstrate that none of the four officers were in the path of travel of Francisco's vehicle, and the only basis for Defendant S.T. to fire his weapon was to attempt to kill the occupants of Francisco's vehicle. Defendant S.T. did not have any objective or subjective belief that deadly force was being used against another person or agent so as to justify his attempts to kill the occupants of Francisco's vehicle. No legitimate law-enforcement purpose justified the use of deadly force under these circumstances.

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

15
COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164ᵗʰ Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

55.     Upon information and belief, Defendant S.T. fired his weapon out of frustration and in an attempt to kill all three occupants of Francisco's vehicle, as the four officers were now on foot.

56.     None of the four officers were struck by Francisco's vehicle as he left the terrifying scene. Even if they had been struck, they had violated CBP Policy by positioning themselves immediately next to the vehicle and pursuing aggressive tactics instead of deescalation techniques, or identifying themselves.

57.     None of the four officers attempted to pursue Francisco's vehicle. In fact, no federal law enforcement agency has ever attempted to inspect Francisco's vehicle, collect any evidence relating to the shooting from Francisco's vehicle such as the bullets, or attempt to obtain any video surveillance from nearby businesses.

58.     After arriving at Francisco's home only a few blocks away, Plaintiffs then called the San Bernardino Police Department (hereinafter referred to as "SBPD"). SBPD responded to Francisco's home at his and his family's request that same morning.

59.     SBPD thereafter handcuffed Francisco inside his home without a warrant, manacling him in front of his wife and children, as a direct and proximate result of the false statements made by Defendants P.K., W.W., S.T., and J.C., detained him in an SBPD officer's squad car, and then questioned/interrogated each Plaintiff individually. Each Plaintiff fully complied and answered all of the SBPD Officers' questions.

60.     SBPD then brought Defendants P.K., W.W., S.T., and J.C. to Francisco's home. SBPD asked these four Defendants to identify who they were looking for. Defendants P.K., W.W., S.T., and J.C. had absolutely no idea who they were looking for and misidentified Plaintiff Daniel as the driver of Francisco's vehicle. Defendants P.K., W.W., S.T., and J.C.  were entirely unable to identify Francisco even while looking right at him.

61.     After showing Defendants P.K., W.W., S.T., and J.C. the cell phone videos taken by Plaintiffs Jonathan and Daniel from inside Francisco's vehicle

16

COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164ᵗʰ Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

depicting the terrifying encounter and subsequent attempted killing by Defendant S.T., including the sound of the gunshots and bullets hitting Francisco's truck, Defendant S.T. then lied and directly stated to Plaintiffs Jonathan and Daniel that "those were not gunshots." This lie was told with the intent to cover up Defendant P.K., W.W., S.T., and J.C.'s unlawful conduct.

62. Subsequent to these custodial interrogations lasting approximately three hours, Francisco was uncuffed and released back into his home. SBPD and Defendants P.K., W.W., S.T., and J.C. departed Francisco's home. SBPD advised that the FBI would be sending agents to take further statements and investigate the shooting.

63. Almost immediately after SBPD and Defendants P.K., W.W., S.T., and J.C. departed Francisco's home, two unidentified men in plain clothes walked up to Francisco's gate and demanded that Daniel let them in. Jonathan asked if they were FBI, and they responded "for all intents and purposes, we are FBI"; however they were in fact ICE and Homeland Security Investigations ("HSI") agents attempting to intimidate Plaintiffs.

64. The two ICE/HSI agents repeatedly asked Jonathan "is he here" but would not clarify or identify who the "he" was that they were searching for. Over the next hour, more than twenty (20) heavily armed HSI agents in body armor and with rifles, accompanied by numerous ICE agents and SBPD officers, swarmed Francisco's neighborhood and shut down the entire block.

65. HSI and/or SBPD and/or ICE agents additionally utilized a drone to fly over and map out the layout of Francisco's home.

66. After several more hours and backlash from the community who were outraged at the attempted killing of one of their neighbors, followed by this unlawful intimidation tactic by federal agents and local police, all of the law enforcement officers and agents finally departed.

67. There was no reasonable suspicion and no probable cause for the stop, seizure, or detention of Francisco Longoria, Jonathan Longoria, or Martin Daniel

THE SIMON LAW GROUP, LLP

2916 W. 164th Street
Torrance, CA 90504

Tel: 310-914-5400 – Fax: 310-914-5401

Rascon. In fact, Defendant United States, by and through Assistant United States Attorney Mr. Cory Burleson, later admitted in open court that there was not even an allegation of any lawful basis for the stop by Defendants P.K., W.W., S.T., and J.C. Attached hereto as Exhibit **"A"** is a true and correct copy of the certified transcript of the initial appearance in *United States of America v. Francisco Javier Longoria*, Case No. 5:25-mj-00533 in the Central District of California, Eastern Division, held on August 28, 2025.

68.    In fact, Defendants P.K., W.W., S.T., and J.C., in addition to other ICE and CBP Officers, were simply stopping members of the public based on their apparent race or ethnicity as being Hispanic or Latino along W. Base Line Street, and Defendants had in fact been conducting regular stops on this same street earlier on the same day as the incident, and had been stopping individuals solely based on their apparent race or ethnicity as being Hispanic or Latino in the same area for several weeks and months prior to the incident. Defendants P.K., W.W., S.T., and J.C. targeted Plaintiffs solely because of their apparent race or ethnicity as being Hispanic or Latino

**THE COVER-UP AND FALSE STATEMENTS**

69.    Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

70.    As stated above, after viewing the videos taken by Plaintiffs Jonathan and Daniel of the encounter, Defendant S.T. lied and directly stated that "those were not gunshots" being heard on the videos despite the sounds clearly depicting the gunshots he had fired and the bullets impacting Francisco's truck. Two unidentified HSI/ICE agents attempted to intimidate Plaintiffs and demand entry into Francisco's home. Thereafter, swarms of heavily armed agents responded to the home in a show of force solely designed to intimidate and threaten Plaintiffs and their community.

71.    Defendant S.T. contacted SBPD just after the incident occurred, reporting to SBPD Police Chief Goodman that "the truck drove towards him, and he thought the truck was trying to strike him" despite the fact that video evidence

18

COMPLAINT FOR DAMAGES

clearly demonstrates that not only were none of the four officers struck, none were in the direction of travel when Francisco drove away in fear for his life and the lives of Jonathan and Daniel. Notably, Defendant S.T. did not claim to SBPD Police Chief Goodman that any of the four officers had been struck by Francisco's vehicle. Attached hereto as Exhibit "**B**" is a true and correct copy of the email correspondence between San Bernardino City Manager Eric Levitt, conveying Police Chief Goodman's statement, and San Bernardino Mayor Helen Tran, at approximately 11:57 a.m. on August 16, 2025.

72.     It was only later, after significant media attention and after Plaintiffs' counsel had repeatedly contacted representatives for DHS, ICE, and CBP demanding an explanation for this unlawful seizure, detention, and attempted killing, that Defendants P.K., W.W., S.T., and J.C. changed their story in an attempt to cover up their wrongful and unlawful conduct.

73.     Following the incident, Defendants P.K., W.W., S.T., and J.C. made false and fabricated statements to HSI Special Agent Tad A. Freesmeier. Each officer falsely claimed to have identified himself to the occupants (in direct contradiction to all video evidence), spoken commands, and sustained physical injuries at the hands of the truck: J.C. falsely claimed he was struck by the truck on his left elbow and left calf; P.K. falsely claimed he was forced to step away to prevent his foot from being run over; W.W. falsely claimed he had to move to avoid being struck and observed S.T. spinning as though he had been hit by the vehicle; and S.T. falsely claimed he was struck and pushed by the truck despite making no mention of any officer being struck when he initially reported the incident to SBPD Police Chief Goodman on the morning of the shooting.

74.     These statements were knowingly false and demonstrably contradicted by the video evidence, including cell phone videos taken by Plaintiffs Jonathan and Daniel of the encounter, as well as a surveillance video from a nearby business, which show that none of the officers were in the path of travel of Francisco's vehicle nor were they struck by Francisco's vehicle. Attached hereto as Exhibit **"C"**

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

are true and correct copies of the cell phone videos taken by Jonathan and Daniel, a video taken by a third-party witness which was posted on the TikTok app, and the surveillance video from a nearby business, which capture the incident and shooting. Defendants P.K., W.W., S.T., and J.C. made these false statements with the intention of covering up their unlawful conduct, and to violate Plaintiff's constitutional rights as described herein.

75.    HSI Special Agent Freesmeier incorporated the four officers' false statements into a sworn affidavit under penalty of perjury and presented it to obtain criminal process against Francisco Longoria.

### THE MILITARIZED ARREST — AUGUST 28, 2025

76.    On the basis of the fabricated statements, Defendant United States commenced criminal proceedings against Francisco Longoria, charging him with felony assault of a federal officer under 18 U.S.C. § 111(a)(1), (b) on August 19, 2025. This has proven to be part of a wide-ranging pattern of behavior by Defendant United States where ICE and/or CBP Officers shoot or otherwise attack innocent people and then manufacture charges under this code section against them, falsely alleging the innocent individual 'weaponized' their vehicle, only to later dismiss all charges.

77.    Defendants, and each of them, knew that Plaintiffs had retained counsel. Plaintiffs' counsel in fact had already reached out to local police, local Congressional representatives, DHS, ICE, CBP, and FBI demanding an investigation into the unlawful stop, seizure, and attempted killing of Francisco.

78.    Despite having actual and/or constructive knowledge that Plaintiff Francisco had counsel who could be contacted to arrange any meeting, or surrender to authorities for any criminal charges which he was clearly innocent of, Defendants intentionally chose a heavily militarized arrest on par with taking the leader of a violent drug cartel into custody instead of a family man with no prior criminal history. Defendants opted for the heavily militarized arrest with the intention of

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

chilling Plaintiffs' speech, chilling Plaintiffs' counsel's speech, and to intimidate and threaten Plaintiffs and the public.

79. At approximately 4:18 a.m. on August 28, 2025, federal agents effectuated the arrest of Francisco at his home. The arrest involved United States Marshals cordoning off the entire residential block, an HSI Armored Personnel Carrier, and dozens of fully armed and armored HSI agents who broke into Francisco's property to effectuate the arrest and manacled him inside his home in front of his wife and children as a direct result of the initial unlawful stop, search and seizure and the subsequent knowingly false statements made by Defendants P.K., W.W., S.T., and J.C. that were made to cover up their unlawful conduct.

80. The HSI agents utilized body armor and full tactical gear, including assault rifles, night-vision goggles and laser sights, waking up Plaintiffs and the residents of Francisco's home to dozens of rifles pointed right at them, including Plaintiff Daniel's then-pregnant fiancée. In the course of the arrest, the HSI agents initially refused to produce any warrant, and damaged Francisco's home including his gates and front door. Attached hereto as Exhibit **"D"** are true and correct copies of surveillance camera footage from Francisco's home depicting the August 28, 2025 militarized arrest.

81. This extraordinary show of force was not proportionate to any actual threat; it was deployed to cover up the unlawful and tortious conduct of Defendants P.K., W.W., S.T., and J.C. on August 16, 2025 and to intimidate Plaintiffs.

**THE INITIAL APPEARANCE, JUDICIAL FINDINGS, AND DISMISSAL**

82. At the initial appearance on the § 111 charges held by U.S. Magistrate Judge A. Joel Richlin on August 28, 2025, Defendant United States, by and through Assistant United States Attorney Mr. Cory Burleson, admitted to the Court that he was not aware of any injuries actually sustained by the four Defendant officers and that there no allegation by Defendant United States that there was any lawful basis for the initial stop on August 16, 2025. (Exhibit **"A"**, Certified Transcript of Initial Appearance, at 10:7-24, 11:18-24).

COMPLAINT FOR DAMAGES

83.    The Court, after viewing a portion of one of the cell phone videos taken by Plaintiffs Jonathan and/or Daniel, stated on the record: "I watched the video and I frankly was confused. And, you know the video is from Mr. Longoria's perspective and from his perspective it's quite scary." (*Id.* at 17:17 – 18:5).

84.    Thereafter, on September 17, 2025, Defendant United States voluntarily dismissed all criminal charges against Francisco Longoria. The voluntary dismissal constitutes a final termination of the criminal proceedings in Francisco Longoria's favor. Attached hereto as Exhibit "E" is a true and correct copy of the September 17, 2025 Order Dismissing Complaint for *United States of America v. Francisco Javier Longoria*, Case No. 5:25-mj-00533, signed by Hon. A. Joel Richlin.

85.    As a direct result of the repeated pattern of ICE and/or CBP officers and agents wrongfully shooting, and in several cases killing, innocent people due to their failure to wear uniforms or identify themselves, ICE is only now allegedly prohibiting agents from making seizures in plain clothes specifically as a result of the large number of shooting incidents involving ICE agents who refuse to identify themselves.[22]

86.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Francisco Longoria suffered: (a) physical injury from being struck in the head by J.C.; (b) severe emotional and psychological injuries including PTSD, anxiety, and depression; (c) lost wages of $45,000; (d) total-loss property damage to his 2001 GMC Sierra 1500 valued at $6,652; and (e) wrongful incarceration, detention, public humiliation, and reputational harm from the lies spread by Defendants regarding the incidents described herein. Plaintiff Francisco Longoria alleges $25,000,000.00 in non-economic damages.

87.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Jonathan Longoria suffered severe emotional and psychological injuries

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

[22]   https://theintercept.com/2026/07/21/ice-undercover-plainclothes-uniform/

22

COMPLAINT FOR DAMAGES

including PTSD, anxiety, and depression, and remains terrified of leaving his home. Plaintiff Jonathan Longoria has also suffered public humiliation and reputational harm from the lies spread by Defendants regarding the incidents described herein. Plaintiff Jonathan Longoria alleges $10,000,000.00 in non-economic damages.

88.    As a direct and proximate result of Defendants' unlawful conduct, Martin Daniel Rascon suffered severe emotional and psychological injuries including PTSD, anxiety, and depression, and remains terrified of leaving his home. Plaintiff Martin Daniel Rascon has also suffered public humiliation and reputational harm from the lies spread by Defendants regarding the incidents described herein. Plaintiff Martin Daniel Rascon alleges $10,000,000.00 in non-economic damages.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FOURTH AMENDMENT — UNREASONABLE SEIZURE
### (*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971))
### All Plaintiffs Against Defendants P.K., W.W., S.T., and J.C., Individually

89.    Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

90.    Defendants P.K., W.W., S.T., and J.C. were federal law-enforcement officers acting under color of federal law at the time of the seizure.

91.    The box-in of the truck in the middle of the intersection, combined with armed agents approaching with guns drawn while wearing face masks, sunglasses, baseball caps, and plain clothes, constituted a seizure of all three Plaintiffs within the meaning of the Fourth Amendment. No reasonable person in Plaintiffs' position would have felt free to leave. Further, Plaintiff Francisco was subsequently manacled inside his own home in front of his wife and children on two separate occasions as a direct result of the initial unlawful stop and subsequent false statements made by Defendants, each instance constituting separate unreasonable seizures.

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

92. The seizures were accomplished without reasonable suspicion and without probable cause. Defendant United States has admitted, by and through Assistant United States Attorney Mr. Cory Burleson, that there was no lawful basis for the initial stop. Further, the initial stop was conducted in violation of the TRO upheld by the Ninth Circuit in *Perdomo v. Noem*, and even ran afoul of the Kavanaugh four-factor evaluation requirements. Defendant United States dismissed all criminal charges against Plaintiff Francisco less than one month after his arrest.

93. As a result of the acts alleged above, Defendants P.K., W.W., S.T., and J.C. used unreasonable, unjustified, and excessive force upon Plaintiffs and intruded on Plaintiffs' personal and bodily integrity. This unreasonable and excessive use of force and intrusion on Plaintiffs' personal and bodily integrity constituted an unlawful search and seizure in violation of Plaintiffs' constitutional rights as guaranteed by the Fourth Amendment to the United States Constitution. Violations of Plaintiffs' Fourth Amendment rights by Defendants P.K., W.W., S.T., and J.C. give rise to a cause of action against them in their individual capacity pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

94. Plaintiffs therefore bring this claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny. To the extent that existing precedent may be construed to limit the availability of a *Bivens* remedy against the Individual Defendants under the circumstances alleged herein, Plaintiffs respectfully assert this claim as a good-faith argument for the recognition and extension of a *Bivens* remedy to these facts, and to preserve the claim and the issue for review, including en banc and United States Supreme Court review. Plaintiffs allege that the egregious, unprovoked, and unconstitutional use of deadly force and seizure alleged herein presents precisely the circumstances in which a damages remedy against the individual federal officers is warranted. Furthermore, Defendant United States has acknowledged there was no lawful basis for the initial stop; this unlawful stop did not occur at or near a border but instead in the interior of the United States as part of a wide-ranging roving

roundup of individuals of apparent Hispanic/Latino race and/or ethnicity in violation of a TRO issued by this District and upheld by the Ninth Circuit; Plaintiffs were targeted solely based on their apparent race and/or ethnicity; Plaintiff Francisco was manacled inside his home in front of his wife and children on two separate occasions as a direct result of the unlawful seizure and false statements by Defendants, which is squarely within *Bivens*; and Supreme Court precedent has confirmed race and/or ethnicity by itself cannot constitute reasonable suspicion of being an illegal immigrant.

95.     All four individual Defendants are liable because each was an integral participant in designing, executing, and maintaining the unlawful stop and box-in. Each are also liable for their individual actions and subsequent false statements: Defendant S.T. for attempting to kill Plaintiffs in direct violation of CBP policy, Defendant J.C. breaking the driver's side window and punching Francisco in the head, and Defendant P.K. breaking the passenger side window showering Jonathan in broken glass and placing Jonathan and Daniel in imminent fear of assault. There was no imminent threat of death or serious bodily injury to any officer, or member of the public, that justified the use of deadly force.

96.     As a direct and proximate result of Defendants' violation of Plaintiffs' Fourth Amendment rights, Plaintiffs have suffered and continue to suffer general and special damages according to proof, including physical injuries, severe emotional distress (PTSD, anxiety, depression), lost wages, property damage, costs of the criminal defense, and all other damages flowing from the unlawful seizure. Plaintiffs seek general damages compensatory damages in an amount to be proven at trial.

97.     In committing the acts alleged above, Defendants P.K., W.W., S.T., and J.C. acted maliciously and/or were guilty of a wanton and reckless disregard for the rights and safety of Plaintiffs, and by reason thereof Plaintiffs are entitled to punitive damages, awarded against the individual Defendant agents only (expressly not against the United States), in an amount to be proven at trial.

COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

98.   Defendants P.K., W.W., S.T., and J.C.'s intrusion on Plaintiffs' bodily integrity was neither accidental nor of a *de minimis* nature. Rather, Defendants P.K., W.W., S.T., and J.C. engaged in the intentional and purposeful stop, search, seizure, assault, and attempted killing of Plaintiff, in a manner that was gratuitously violent.

99.   The above acts by Defendants P.K., W.W., S.T., and J.C. had no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the consciences, are fundamentally unfair, arbitrary and oppressive, and are unjustifiable as a means of conducting any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE FOURTH AMENDMENT — EXCESSIVE FORCE
### (*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971))
### All Plaintiffs Against Defendants P.K., W.W., S.T., and J.C., Individually

100.   Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

101.   Defendants P.K., W.W., S.T., and J.C. were federal law-enforcement officers acting under color of federal law at the time of the seizure.

102.   Force was used during the course of the seizures on August 16, 2025 and then on 28, 2025. Force used included: (a) guns drawn and pointed at all three Plaintiffs; (b) J.C.'s deliberate striking of Francisco Longoria's head after breaking the driver's-side window; (c) P.K. breaking the front passenger window, showering Jonathan with broken glass, and reaching into the vehicle; (d) S.T. firing multiple rounds from behind into the occupied truck; (e) Francisco being manacled inside his home in front of his wife and children without a warrant on August 16, 2025 as a direct result of the knowingly false statements made by Defendants P.K., W.W., S.T., and J.C.; and (f) Francisco being manacled inside his home and assaulted by dozens of HSI agents in front of his wife and children on August 28, 2025 as a direct

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

result of the knowingly false statements made by Defendants P.K., W.W., S.T., and J.C.

103.   The seizure was accomplished without reasonable suspicion and without probable cause. Defendant United States has admitted, by and through Assistant United States Attorney Mr. Cory Burleson, that there was no lawful basis for the stop. Further, the stop was conducted in violation of the TRO upheld by the Ninth Circuit in *Perdomo v. Noem*, and even ran afoul of the Kavanaugh four-factor evaluation requirements. Defendant United States dismissed all criminal charges against Plaintiff Francisco less than one month after his arrest.

104.   As a result of the acts alleged above, Defendants P.K., W.W., S.T., and J.C. used unreasonable, unjustified, and excessive force upon Plaintiffs and intruded on Plaintiffs' personal and bodily integrity. This unreasonable and excessive use of force and intrusion on Plaintiffs' personal and bodily integrity constituted an unlawful search and seizure in violation of Plaintiffs' constitutional rights as guaranteed by the Fourth Amendment to the United States Constitution. Violations of Plaintiffs' Fourth Amendment rights by Defendants P.K., W.W., S.T., and J.C. give rise to a cause of action against them in their individual capacity pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

105.   Plaintiffs therefore bring this claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and its progeny. To the extent that existing precedent may be construed to limit the availability of a *Bivens* remedy against the Individual Defendants under the circumstances alleged herein, Plaintiffs respectfully assert this claim as a good-faith argument for the recognition and extension of a *Bivens* remedy to these facts, and to preserve the claim and the issue for review, including en banc and United States Supreme Court review. Plaintiffs allege that the egregious, unprovoked, and unconstitutional use of deadly force and seizure alleged herein presents precisely the circumstances in which a damages remedy against the individual federal officers is warranted. Furthermore, Defendant United States has acknowledged there was no

THE SIMON LAW GROUP, LLP

2916 W. 164th Street
Torrance, CA 90504

Tel: 310-914-5400 – Fax: 310-914-5401

lawful basis for the initial stop; this unlawful stop did not occur at or near a border but instead in the interior of the United States as part of a wide-ranging roving roundup of individuals of apparent Hispanic/Latino race and/or ethnicity in violation of a TRO issued by this District and upheld by the Ninth Circuit; Plaintiffs were targeted solely based on their apparent race and/or ethnicity; Plaintiff Francisco was manacled inside his home in front of his wife and children on two separate occasions as a direct result of the unlawful seizure and false statements by Defendants, which is squarely within *Bivens*; and Supreme Court precedent has confirmed race and/or ethnicity by itself cannot constitute reasonable suspicion of being an illegal immigrant.

106.    Applying the objective-reasonableness standard, the force used against Plaintiffs was objectively unreasonable under all the circumstances. Plaintiffs were unarmed occupants of a lawfully operated vehicle, none of whom had any criminal history, subjected to an unlawful stop by unidentified armed men in plain clothes, masks, glasses, and baseball caps, who refused to identify themselves or state the reason they were assaulting Plaintiffs. None of the four Defendant officers were in the path of the truck at the time Defendant S.T. fired, as conclusively demonstrated by the video evidence.

107.    All four agents are liable under integral-participant and failure to intervene doctrines. Each are also liable for their individual actions: Defendant S.T. for attempting to kill Plaintiffs in direct violation of CBP policy, Defendant J.C. breaking the driver's side window and punching Francisco in the head, and Defendant P.K. breaking the passenger side window showering Jonathan in broken glass and placing Jonathan and Daniel in imminent fear of assault. There was no imminent threat of death or serious bodily injury to any officer, or member of the public, that justified the use of deadly force.

108.    As a direct and proximate result of Defendants' violation of Plaintiffs' Fourth Amendment rights, Plaintiffs have suffered and continue to suffer general and special damages according to proof, including physical injuries, severe

emotional distress (PTSD, anxiety, depression), lost wages, property damage, costs of the criminal defense, and all other damages flowing from the unlawful seizure. Plaintiffs seek general damages compensatory damages in an amount to be proven at trial.

109. In committing the acts alleged above, Defendants P.K., W.W., S.T., and J.C. acted maliciously and/or were guilty of a wanton and reckless disregard for the rights and safety of Plaintiffs, and by reason thereof Plaintiffs are entitled to punitive damages, awarded against the individual Defendant agents only (expressly not against the United States), in an amount to be proven at trial.

110. Defendants P.K., W.W., S.T., and J.C.'s intrusion on Plaintiffs' bodily integrity was neither accidental nor of a *de minimis* nature. Rather, Defendants P.K., W.W., S.T., and J.C. engaged in the intentional and purposeful stop, search, seizure, assault, and attempted killing of Plaintiffs, in a manner that was gratuitously violent.

111. The above acts by Defendants P.K., W.W., S.T., and J.C. had no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the consciences, are fundamentally unfair, arbitrary and oppressive, and are unjustifiable as a means of conducting any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order.

### THIRD CAUSE OF ACTION
### ASSAULT — FEDERAL TORT CLAIMS ACT
**(28 U.S.C. §§ 1346(b), 2674, 2680(h))**
**All Plaintiffs Against Defendant United States of America**

112. Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

113. Defendants P.K., W.W., S.T., and J.C. were federal law-enforcement officers acting within the course and scope of their employment with the United States.

COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

114.   Defendants P.K., W.W., S.T., and J.C. deliberately drew and pointed loaded firearms at Francisco, Jonathan, and Daniel; deliberately broke the truck's windows while maintaining weapons pointed at the occupants; Defendant J.C. deliberately struck Francisco in the face and head; Defendant P.K. deliberately broke the passenger side window showering Jonathan in broken glass and placing Jonathan and Daniel in imminent fear and anticipation of bodily harm and assault; and Defendant S.T. deliberately fired multiple rounds at the occupied truck. These constituted intentional acts designed to cause, and that did cause, reasonable apprehension and anticipation of imminent harmful or offensive contact, satisfying the elements of assault under California law, the private-person analog under the FTCA.

115.   Defendants P.K., W.W., S.T., and J.C. intended to cause harmful or offensive contact, and additionally threatened to touch Plaintiffs in a harmful or offensive manner.

116.   All three Plaintiffs, confronted by multiple armed men in plain clothes who had blocked their vehicle, broken windows, and pointed guns at them, reasonably apprehended imminent harmful or offensive contact and did not consent to any of Defendants' conduct.

117.   This claim falls within the law-enforcement sub-section of 28 U.S.C. § 2680(h), which preserves FTCA liability for assault committed by federal law-enforcement officers including ICE and CBP officers.

118.   As a direct and proximate result of the assault committed by employees of the United States acting within the scope of their employment, Plaintiffs have suffered and continue to suffer general and special damages including severe emotional distress, PTSD, anxiety, depression, physical injury, lost wages, property damage, and all other damages according to proof, for which Plaintiffs are entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*

/ / /

COMPLAINT FOR DAMAGES

**FOURTH CAUSE OF ACTION**
**BATTERY — FEDERAL TORT CLAIMS ACT**
**(28 U.S.C. §§ 1346(b), 2674, 2680(h))**
**All Plaintiffs Against Defendant United States of America**

119. Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

120. Defendant J.C. intentionally broke the driver's-side window and struck Francisco in the head with his fist, constituting completed battery against Francisco. Defendant P.K.'s forcible breaking of the passenger window constitutes offensive contact directed at Jonathan and Daniel. Defendant S.T.'s discharge of a firearm into the occupied truck constitutes battery as to all three occupants, as the bullets entered the occupied passenger compartment. All acts were committed by employees of the United States within the scope of their employment, and constituted unreasonable force used upon Plaintiffs.

121. Plaintiffs did not consent to any physical contact. The battery directly and proximately caused Francisco physical injury, property damage, and severe emotional distress; and caused Jonathan and Daniel severe emotional and psychological distress through the assault, passenger window break, and Defendant S.T's discharge of a firearm into the truck.

122. This claim falls within the law-enforcement sub-section of 28 U.S.C. § 2680(h), which preserves FTCA liability for battery committed by federal law-enforcement officers including ICE and CBP officers.

123. As a direct and proximate result of the battery committed by employees of the United States acting within the scope of their employment, Plaintiffs have suffered and continue to suffer general and special damages including severe emotional and psychological distress, PTSD, anxiety, depression, physical injury, lost wages, property damage, and all other damages according to proof, for which Plaintiffs are entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

## FIFTH CAUSE OF ACTION
## FALSE ARREST / FALSE IMPRISONMENT — FEDERAL TORT CLAIMS ACT
## (28 U.S.C. §§ 1346(b), 2674, 2680(h))
### All Plaintiffs Against Defendant United States of America

124.   Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

125.   The box-in of the truck by Defendants P.K., W.W., S.T., and J.C. on August 16, 2025, constituted an intentional, non-consensual confinement of all three occupants from the moment they were blocked in the intersection with guns pointed at them. No reasonable person would have felt free to leave. The initial confinement was effected without any legal basis and without any warrant.

126.   There was no reasonable suspicion or probable cause to manacle Francisco at his home in front of his wife and children on August 16, 2025, as the predicate factual assertions were knowingly false and directly contradicted by video evidence and Defendant S.T.'s communications to SBPD Police Chief Goodman, and Defendant United States admitted to having no knowledge of any supposed injuries sustained by any of the officers.

127.   The militarized arrest of Francisco Longoria at 4:18 a.m. on August 28, 2025 involving U.S. Marshals, an HSI Armored Personnel Carrier, and dozens of armed agents who broke into his property and manacled him in front of his wife and children, as a direct result of the initial unlawful stop and subsequent false statements made by Defendants P.K., W.W., S.T., and J.C., constituted intentional arrest and physical detention on fabricated charges under 18 U.S.C. § 111(a)(1),(b). Francisco was held in federal custody pending criminal proceedings until the criminal charges were dismissed on September 17, 2025.

128.   There was no reasonable belief in the lawfulness of the August 16, 2025 stop, and Defendant United States has admitted there was no lawful basis for the August 16, 2025 stop.

COMPLAINT FOR DAMAGES

129.   There was no probable cause for the August 28, 2025 arrest of Francisco as the predicate factual assertions were knowingly false and directly contradicted by video evidence and Defendant S.T.'s communications to SBPD Police Chief Goodman, and Defendant United States admitted to having no knowledge of any supposed injuries sustained by any of the officers.

130.   Plaintiffs did not consent to either the August 16, 2025 or the August 28, 2025 confinement.

131.   This claim falls within the law-enforcement sub-section of 28 U.S.C. § 2680(h), which preserves FTCA liability for false arrest and false imprisonment by federal law-enforcement officers.

132.   As a direct and proximate result of the false arrest and false imprisonment committed by employees of the United States acting within the course and scope of their employment, Plaintiffs have suffered and continue to suffer general and special damages including severe emotional distress, PTSD, anxiety, depression, physical injury, lost wages, property damage, and all other damages according to proof, for which Plaintiffs are entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*

### SIXTH CAUSE OF ACTION
### MALICIOUS PROSECUTION — FEDERAL TORT CLAIMS ACT
**(28 U.S.C. §§ 1346(b), 2674, 2680(h))**
**Plaintiff Francisco Longoria Against Defendant United States of America**

133.   Plaintiff Francisco Longoria incorporates by reference each and every preceding paragraph as though fully set forth herein. This cause of action is brought solely by Plaintiff Francisco Longoria.

134.   The United States, through its agents P.K., W.W., S.T., and J.C., who made false and fabricated statements to HSI Special Agent Freesmeier, HSI Special Agent Freesmeier who swore a perjured affidavit, based on false and fabricated statements, and through Assistant United States Attorney Cory Burleson, initiated

THE SIMON LAW GROUP, LLP

2916 W. 164ᵗʰ Street
Torrance, CA 90504

Tel: 310-914-5400 – Fax: 310-914-5401

COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

and maintained a federal criminal prosecution of Francisco Longoria on charges of felony assault of a federal officer, 18 U.S.C. § 111(a)(1),(b), filed on or about August 19, 2025.

135. The criminal proceeding was initiated without probable cause. The predicate factual assertion that the officers were struck by the truck, suffered injuries, had any lawful basis for the initial stop, or had properly identified themselves and/or the purpose of the stop, were each demonstrably false and entirely fabricated by Defendants P.K., W.W., S.T., and J.C. Defendant S.T. made no mention of any officer allegedly being struck by Francisco's truck in his initial correspondence with SBPD Police Chief Goodman, only later creating the fiction in order to manufacture Francisco's arrest, which fell apart as soon as multiple video angles of the incident emerged. Defendant United States, by and through Assistant United States Attorney Mr. Cory Burleson, admitted at the initial appearance in the criminal case that he was unaware of any officer injuries and that there was no lawful basis for the initial stop. (Exhibit "A" at 10:7-24, 11:18-24).

136. The prosecution was initiated with malice, not to further legitimate law-enforcement objectives, but to conceal the agents' own unconstitutional and tortious conduct on August 16, 2025, and to intimidate and punish Francisco for driving away from an unlawful stop and for the negative media attention the incident brought upon the United States. The extraordinary use of a militarized arrest force corroborates the improper motive, as does the dozens of false charges Defendant United States has brought against innocent individuals for allegedly assaulting ICE officers across the country, only to dismiss all charges as soon as the government is required to produce evidence.

137. The United States voluntarily dismissed all criminal charges against Francisco Longoria on September 17, 2025. (Exhibit "E"). A voluntary dismissal by the government constitutes a termination of the criminal proceeding favorable to the accused.

138.   Discretionary function immunity under the FTCA does not apply where, as here, there was no legitimate policy rationale in Defendants P.K., W.W., S.T., and J.C. conducting an admittedly unlawful stop of Plaintiffs, nor was there any legitimate policy rationale in Defendants P.K., W.W., S.T., and J.C. thereafter making false statements and fabricating evidence in order to secure a prosecution against Francisco as retaliation. This conduct has no role to play in the legitimate functioning of government.

139.   As a direct and proximate result of the malicious prosecution, Francisco has suffered and continues to suffer damages including wrongful incarceration, lost wages of $45,000, defense costs, severe emotional and psychological injuries, reputational harm, PTSD, depression, anxiety, general and special damages and all other damages according to proof, for which Plaintiff is entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*

### SEVENTH CAUSE OF ACTION
### ABUSE OF PROCESS — FEDERAL TORT CLAIMS ACT
### (28 U.S.C. §§ 1346(b), 2674, 2680(h))
### Plaintiff Francisco Longoria Against Defendant United States of America

140.   Plaintiff Francisco Longoria incorporates by reference each and every preceding paragraph as though fully set forth herein. This cause of action is brought solely by Plaintiff Francisco Longoria.

141.   Defendants P.K., W.W., S.T., and J.C. and their supervisors intentionally caused criminal process, the initial stop, the § 111 charges, and the subsequent militarized arrest and detention, to be used not to serve a legitimate law-enforcement purpose but rather to conceal and deflect accountability for the agents' own unlawful stop, assault, battery, and attempted killing on August 16, 2025. This constitutes an ulterior purpose other than resolving a legitimate legal dispute.

142.   Defendant United States intentionally weaponized the awesome power of the federal criminal justice apparatus through the fabricated statements of

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

THE SIMON LAW GROUP, LLP

2916 W. 164th Street
Torrance, CA 90504

Tel: 310-914-5400 – Fax: 310-914-5401

Defendants P.K., W.W., S.T., and J.C., HSI Agent Freesmeier's affidavit based on those fabricated statements, §111 charges, and a militarized arrest and detention against an innocent man to manufacture the appearance that Defendants P.K., W.W., S.T., and J.C. were victims rather than perpetrators. This willful and improper use of process to cover up official misconduct is not a proper use of the criminal justice system.

143.   As a direct and proximate result of the abuse of process, Francisco Longoria was repeatedly manacled in his home in front of his wife and children, was wrongfully detained in federal custody for weeks, has suffered and continues to suffer damages including wrongful imprisonment, public humiliation, and reputational harm, lost wages, severe emotional and psychological injuries including PTSD, depression, and anxiety, general and special damages and all other damages according to proof, for which Plaintiff is entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*

**EIGHTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — FEDERAL TORT CLAIMS ACT**
**(28 U.S.C. §§ 1346(b), 2674, 2680(h))**
**All Plaintiffs Against Defendant United States of America**

144.   Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

145.   Defendants P.K., W.W., S.T., and J.C. conduct constitutes extreme and outrageous conduct exceeding all bounds usually tolerated in a civilized society and transcending human decency: blocking the truck with unmarked vehicles; approaching with guns drawn while wearing face masks, sunglasses, baseball caps, and plain clothes designed to conceal their identities; refusing to identify themselves; breaking the windows; striking Francisco in the head; firing multiple rounds into an occupied vehicle containing a father and his teenage son; and subsequently orchestrating a 4:18 a.m. militarized arrest on fabricated charges.

36
COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

146.   Defendants P.K., W.W., S.T., and J.C. intended to cause, and did cause, Plaintiffs to experience severe emotional distress, and each acted with a reckless disregard of the probability of causing severe emotional distress. Menacingly threatening the innocent occupants of a vehicle without any lawful basis to do so, shattering windows and assaulting the occupants, the use of firearms against an occupied vehicle that posed no danger to anyone in violation of CBP Use of Force Policy, and the orchestration of a militarized arrest on fabricated charges were acts that any reasonable person would know would cause severe emotional distress.

147.   Plaintiffs have suffered severe emotional distress that is and was actually caused by the agents' extreme and outrageous conduct such that it was a substantial factor in causing said distress. Francisco suffers PTSD, anxiety, depression, ongoing trauma, and fear for himself and his family; Jonathan, who witnessed the attack on his father and feared for his own life and safety, suffers PTSD, anxiety, and depression, and remains terrified to leave his home; Daniel similarly witnessed the attack and feared for his own life and safety, and suffers PTSD, anxiety, and depression, and is fearful of leaving his home.

148.   As a direct and proximate result of the intentional infliction of emotional distress, Plaintiffs have suffered and continue to suffer severe emotional and psychological injuries including PTSD, anxiety, and depression, general and special damages and all other damages according to proof, for which Plaintiff is entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*

### NINTH CAUSE OF ACTION
### NEGLIGENCE — FEDERAL TORT CLAIMS ACT
### (28 U.S.C. §§ 1346(b), 2674)
### All Plaintiffs Against Defendant United States of America

149.   Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

COMPLAINT FOR DAMAGES

150.    Defendants P.K., W.W., S.T., and J.C. were federal law-enforcement officers acting in their official capacity within the course and scope of their employment as law enforcement officers for ICE and CBP, an agency of Defendant United States.

151.    The United States, acting through Defendants P.K., W.W., S.T., and J.C. and other DHS/ICE ERO and DHS/CBP officers, owed Plaintiffs a duty to conduct any law-enforcement activity in a lawful, reasonable, and non-tortious manner, including duties to: (a) have an adequate legal basis before stopping or detaining individuals; (b) properly identify themselves as law enforcement; (c) use only lawful and proportionate force in accordance with existing Use of Force Policy, and refrain from using any force that was not objectively reasonable under the totality of the circumstances; (d) conduct an accurate, fair, and thorough post-incident investigation; and (e) accurately report facts to investigating agents and prosecutors. Defendant United States, by and through its employees, had a duty to avoid needless and negligently harming Plaintiffs during and after an arrest.

152.    Defendants P.K., W.W., S.T., and J.C. breached these duties by conducting a stop without reasonable suspicion or any lawful basis; failing to identify themselves, state the reason for the stop, or display credentials; failing to wear any uniform and instead purposely concealing their identities so as to cause confusion; using disproportionate and objectively unreasonable force through breaking windows, striking Francisco in the head, and firing multiple bullets into Francisco's occupied truck when it did not pose a danger to anyone; submitting knowingly false statements about being injured; and causing criminal process to be initiated on the basis of false information. Additionally, DHS supervisors and ICE/CBP as institutions breached their duties by failing to adequately train, supervise, or discipline officers engaged in plainclothes law-enforcement stops.

153.    The negligent conduct of the United States' employees as complained of above directly and proximately caused the injuries to all three Plaintiffs, such that it was a substantial factor in causing harm to Plaintiffs.

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

154.   As a direct and proximate result of the negligence of the United States' employees acting within the scope of their employment, Plaintiffs have suffered general and special damages including physical injury, severe emotional and psychological injuries including PTSD, anxiety, and depression, lost wages, property damage, general and special damages and all other damages according to proof, for which Plaintiff is entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*

## TENTH CAUSE OF ACTION
## VIOLATION OF CAL. CIV. CODE § 52.1 — BANE ACT
### (Cal. Civ. Code §§ 52.1, 52(b))
**All Plaintiffs Against Defendants United States of America, P.K., W.W., S.T., and J.C.**

155.   Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

156.   Defendants interfered with Plaintiffs' rights secured by the Fourth Amendment to the United States Constitution and by Article I, Sections 7 and 13 of the California Constitution.

157.   Defendant United States, by and through Defendants P.K., W.W., S.T., and J.C.'s conduct as described fully in detail above, blocking the truck with multiple vehicles, drawing and pointing loaded firearms, refusing to identify themselves, breaking the truck's windows, striking Francisco, and firing multiple rounds into the occupied vehicle, constitutes threats, intimidation, and coercion, and attempted to interfere by threats, intimidation, and coercion, with the exercise and enjoyment of Plaintiff's rights as secured by Article I, Sections 7 and 13 of the California Constitution, within the meaning of Cal. Civ. Code § 52.1.

158.   Defendant United States, by and through Defendants P.K., W.W., S.T., and J.C.'s conduct described above, was deliberate and intended to deprive Plaintiffs of their enjoyment of the rights and interests protected by the California Constitution.

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

159.    Defendants P.K., W.W., S.T., and J.C., and thereby Defendant United States, acted in their official capacity and in the course and scope of their employment as ICE and CBP Officers of Defendant United States.

160.    The actions of Defendants P.K., W.W., S.T., and J.C, and thereby Defendant United States, were a substantial factor in causing harm to Plaintiffs. As a direct and proximate result of Defendants' Bane Act violations, Plaintiffs have suffered actual damages for which Plaintiff is entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*, and are entitled to treble damages, a civil penalty of $25,000 per Plaintiff per violation, attorney's fees, and costs of suit pursuant to Cal. Civ. Code §§ 52.1 and 52(b).

### ELEVENTH CAUSE OF ACTION
### VIOLATION OF CAL. CIV. CODE § 51.7 — RALPH ACT
### (Cal. Civ. Code §§ 51.7, 52(b))
**All Plaintiffs Against Defendants United States of America, P.K., W.W., S.T., and J.C.**

161.    Plaintiffs incorporate by reference each and every preceding paragraph as though fully set forth herein.

162.    Defendant United States, by and through Defendants P.K., W.W., S.T., and J.C.'s conduct as described fully in detail above, blocking the truck with multiple vehicles, drawing and pointing loaded firearms, refusing to identify themselves, breaking the truck's windows, striking Francisco, and firing multiple rounds into the occupied vehicle, constitutes violence and threats of violence within the meaning of Cal. Civ. Code § 51.7.

163.    On information and belief Defendants targeted Plaintiffs because of their actual or perceived race, ancestry, national origin, and/or immigration status. The only information Defendants knew about Plaintiffs at the time of the initial stop was their apparent race and/or national origin, as Plaintiffs had no criminal history and were previously unknown to Defendants. The intentional targeting of a vehicle driven by individuals of apparent Hispanic and/or Latino descent, solely based on

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

COMPLAINT FOR DAMAGES

said apparent Hispanic and/or Latino descent, for a warrantless stop without any lawful predicate basis, in the immigration-enforcement context involving ICE ERO and CBP officers despite the active TRO issued by this District and upheld by the Ninth Circuit, is consistent with selective enforcement based on a protected characteristic. A substantial motivating reason for Defendants' violence and threats of violence was their perception of Plaintiffs' race, ancestry, national origin, citizenship, and/or immigration status.

164. A reasonable person in Plaintiffs' position would have believed that Defendants would carry out their threat, and in fact Defendants did carry out their threats.

165. A reasonable person in Plaintiffs' position would have been intimidated by Defendants' conduct.

166. The actions of Defendants P.K., W.W., S.T., and J.C, and thereby Defendant United States, were a substantial factor in causing harm to Plaintiffs. As a direct and proximate result of Defendants' Ralph Act violations, Plaintiffs have suffered actual damages for which Plaintiff is entitled to monetary relief pursuant to the FTCA, 28 U.S.C. § 2671 *et seq.*, and are entitled to treble damages, a civil penalty of $25,000 per Plaintiff per violation, attorney's fees, and costs of suit pursuant to Cal. Civ. Code §§ 51.7 and 52(b).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

41

COMPLAINT FOR DAMAGES

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs FRANCISCO LONGORIA, JONATHAN LONGORIA, and MARTIN DANIEL RASCON pray for judgment against Defendants as follows:

a. For a judgment against all Defendants for general and compensatory damages for physical injury, pain and suffering, emotional distress, PTSD, anxiety, depression, public humiliation, loss of reputation, loss of enjoyment of life, and all other non-economic damages sustained by each Plaintiff, according to proof;

b. For a judgment against all Defendants for special damages for:

    a. Lost wages for Francisco Longoria in the amount of $45,000.00;

    b. Property damage for Francisco Longoria in the amount of $6,652.00;

    c. All other economic and special damages for all Plaintiffs according to proof at time of trial;

c. For a judgment against the United States on the FTCA counts not to exceed the sum stated in each Plaintiff's SF-95 claim:

    a. For Plaintiff Francisco Longoria: $25,051,652.00;

    b. For Plaintiff Jonathan Longoria: $10,000,000.00;

    c. For Plaintiff Martin Daniel Rascon: $10,000,000.00;

d. Punitive and exemplary damages against Defendants P.K., W.W., S.T., and J.C., individually, and only, in such amount as the jury determines appropriate to punish their willful, malicious, oppressive, and reckless conduct;

e. Statutory damages and civil penalties under Cal. Civ. Code §§52.1, 52(b), and 51.7, including:

    a. Actual damages or treble actual damages as permitted by law; and

    b. $25,000 civil penalty per Plaintiff per statutory violation against each Defendant found liable under the Bane Act and Ralph Act;

f. Attorney's fees and costs against each applicable Defendant pursuant to Cal. Civ. Code § 52.1(i) and § 52(b)(3);

g. Pre-judgment interest and post-judgment interest at the maximum lawful rate;

h. Costs of suit herein incurred; and

i. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED: July 24, 2026                         **THE SIMON LAW GROUP, LLP**

By:  __/S/ Gregory A. Jackson__
Greg A. Jackson, Esq. (SBN 318829)
Attorneys for Plaintiffs Francisco Longoria, Jonathan Longoria, and Martin Daniel Rascon

## **DEMAND FOR JURY TRIAL**

Plaintiffs FRANCISCO LONGORIA, JONATHAN LONGORIA, and MARTIN DANIEL RASCON hereby demand a trial by jury on all issues so triable, including but not limited to all claims under:

(1) The First Cause of Action (Bivens — Fourth Amendment Unreasonable Seizure);

(2) The Second Cause of Action (Bivens — Fourth Amendment Excessive Force);

(3) The Tenth Cause of Action (California Bane Act — Cal. Civ. Code § 52.1); and

COMPLAINT FOR DAMAGES

(4) The Eleventh Cause of Action (California Ralph Act — Cal. Civ. Code § 51.7).

Respectfully submitted,

DATED: ___July 24, 2026___

THE SIMON LAW GROUP, LLP

By: ___/S/ Gregory A. Jackson___
Greg A. Jackson, Esq. (SBN 318829)
Attorneys for Plaintiffs Francisco
Longoria, Jonathan Longoria, and
Martin Daniel Rascon

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

# EXHIBIT "A"

COMPLAINT FOR DAMAGES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(EASTERN DIVISION - RIVERSIDE)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 5:25-mj-00533 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| FRANCISCO JAVIER LONGORIA, | ) | Thursday, August 28, 2025 |
| | ) | |
| Defendant. | ) | (3:24 p.m. to 3:47 p.m.) |

INITIAL APPEARANCE

BEFORE THE HONORABLE A. JOEL RICHLIN,
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**          SEE PAGE 2

Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Dana Castellanos

Interpreter:             Mylene Green
                         Spanish Language

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**


Plaintiff:                          AUSA CORY BURLESON
                                    U.S. Attorney's Office
                                    3403 Tenth Street
                                    Suite 200
                                    Riverside, CA 92501


Defendant:                          DFPD LUISA P. TAMEZ
                                    Federal Public Defender's Ofc.
                                    321 East 2nd Street
                                    Los Angeles, CA 90012

3

**Los Angeles, California; Thursday, August 28, 2025; 3:24 p.m.**

--oOo--

THE CLERK:  Calling Case No. 5:25-mj-533, *United States of America versus Francisco Javier Longoria.*  Counsel, your appearances please?

MR. BURLESON:  Good afternoon again, Your Honor, Cody Burleson for the United States.

THE COURT:  Good afternoon.

MS. TAMEZ:  Good afternoon, Your Honor, Luisa Tamez on behalf of Mr. Francisco Javier Longoria who is present in court and appearing with the assistance of a Spanish interpreter.

THE COURT:  Good afternoon to you, Ms. Tamez, and to you, Mr. Longoria.  Do you go by Longoria or Javier Longoria?

THE DEFENDANT:  Francisco Longoria.

THE COURT:  Okay.  So I'll just go with Mr. Longoria then.  Can I ask the interpreter to state her appearance for the record?

THE INTERPRETER:  Yes, Your Honor.  Mylene Green, federally certified interpreting for Mr. Francisco Javier Longoria.

THE COURT:  Great, thank you, Ms. Green, for your help today.

So, Mr. Longoria, if at any point during the hearing today you're not understanding what's being said, will you

4

please raise your hand and let me know?

THE DEFENDANT:  Yes, thank you.

THE COURT:  Okay.  So, Mr. Longoria, we're here today because you have been charged by the United States with a felony through a document called a complaint.  What I'm going to do is I'm going to start by reviewing some of the paperwork that I received from you and your attorney, then I'll have some questions for you and then we'll talk about your case a little bit.  Okay?

THE DEFENDANT:  Yes, that's fine.

THE COURT:  All right.  So the first document I received from you and your attorney is your financial affidavit.  Having reviewed that, I find that you are eligible for the appointment of counsel at no cost and I will appoint Ms. Tamez of the Federal Public Defender's Office to represent you in this case.

The next document I'm going to review from you is called the advisement of defendant's statutory and constitutional rights.  I'm holding up my copy.  This document describes your rights as a criminal defendant under federal law and the United States Constitution.  It looks like you signed on the second page; is that correct, did you sign this document?

THE DEFENDANT:  Yes, I did, I signed it.

THE COURT:  Before signing this document, did you

5

have it read to you by a Spanish language interpreter?

**THE DEFENDANT:**  Yes.

**THE COURT:**  And do you feel like you understand your rights as contained in the document?

**THE DEFENDANT:**  Yes.

**THE COURT:**  Do you have any questions for me about what your rights are?

**THE DEFENDANT:**  No, everything is fine.

**THE COURT:**  Okay.  Ms. Tamez, did you also sign this document?

**MS. TAMEZ:**  Yes, Your Honor.

**THE COURT:**  Having had an opportunity to talk with your client, do you agree that he understands his rights?

**MS. TAMEZ:**  I do, Your Honor.

**THE COURT:**  And it looks like a Spanish language interpreter, Ms. Bianchi translated this document for him; is that correct?

**MS. TAMEZ:**  That's correct, Your Honor.

**THE COURT:**  Okay.  All right.  Mr. Longoria, the next document I'm going to review is your assertion of Fifth and Sixth Amendment rights and that I'm holding up.  So I'll just acknowledge for the record, you do have the right under the Fifth Amendment to remain silent, you can say nothing at all and you have the right under the Sixth Amendment to the effective assistance of counsel and I have appointed Ms. Tamez

6

of the Federal Public Defender's Office to represent you in this case.

Okay. One of the rights you have, you've been charged by complaint, so you're entitled to something called a preliminary hearing. A preliminary hearing is a hearing at which the Government would be required to present evidence to establish probable cause to support the allegations against you.

Ms. Tamez, my understanding is you want to go ahead and schedule a preliminary hearing in this case; is that correct?

**MS. TAMEZ:** That's correct, Your Honor.

**THE DEFENDANT:** Yes.

**THE COURT:** Okay. All right. Then I'm going to schedule a preliminary hearing and a date for post indictment arraignment. The preliminary hearing will be on Thursday, September 18, 2025 at 4:30 p.m. in this courtroom. The post indictment arraignment date which will be an appearance like this after the point at which you're indicted, if you are later indicted, Mr. Longoria, that will be on September 23, 2025 at 10 a.m. in this courtroom.

Okay. So let's talk about the charges against you, Mr. Longoria. As I mentioned, you are charged through a document called a complaint. I'm holding up my copy of the complaint. Have you and your attorney received a copy of this

7

complaint?

THE DEFENDANT:  Yes, I do have that.

THE COURT:  And have you had the opportunity to discuss that with your attorney and with the assistance of a Spanish language interpreter?

THE DEFENDANT:  Yes, it's fine.

THE COURT:  And I'm not asking you if you agree with the allegations in the complaint, instead my question is, do you know what the Government is accusing you of?

THE DEFENDANT:  The attorney told me what I was being accused of.

THE COURT:  Okay.  Do you have any questions for me about what the allegations against you are?

THE DEFENDANT:  No.

THE COURT:  Okay.  And then, of course, if you do have any questions in the future, you have a copy of this complaint you can review with your attorney at your leisure and you can always ask her any follow up questions.

Ms. Tamez, having had an opportunity to talk with your client, do you agree that he understands the nature of the allegations against him?

MS. TAMEZ:  Yes, Your Honor.

THE COURT:  Okay.  So, Mr. Longoria, what I'm going to do now because this is your first appearance before me on these charges is I'm going to instruct the Government pursuant

EXCEPTIONAL REPORTING SERVICES, INC

8

to a law called the Due Process Protections Act.  That's a law specifically designed to protect criminal defendants such as yourself.  Therefore, Mr. Burleson, pursuant to the Due Process Protections Act and Central District General Order 21-02 the Court will order the Government to comply with the disclosure obligations under Brady v Maryland and its progeny.  And the Court reminds the Government of the possible consequences of not doing so.

Those are consequences include the exclusion of evidence, adverse jury instructions, dismissal of charges, contempt, referral to a disciplinary authority and sanctions. Does the Government understand its obligations and agree to comply?

**MR. BURLESON:**  We do, Your Honor.

**THE COURT:**  Okay.  Thank you.

All right.  The Court has received from the Government a notice of request for detention, is the Government still seeking detention in this matter?

**MR. BURLESON:**  We are, Your Honor.

**THE COURT:**  Okay.  And, Ms. Tamez, is the defense ready to proceed with a detention hearing today?

**MS. TAMEZ:**  Yes, Your Honor.

**THE COURT:**  Okay.  And have the parties reached any agreement on the Government's request that I should be aware of?

9

**MS. TAMEZ:** No, Your Honor.

**THE COURT:** Okay. So, Mr. Burleson, why don't you go forward and present your motion.

**MR. BURLESON:** Thank you, Your Honor.

At the outset, I'll just tell Your Honor, the Government proffers the complaint and the pretrial services report but not its recommendation for bond.

Your Honor, first, the Government is entitled to a detention hearing here on the basis of serious risk of flight. As detailed in the complaint when immigration officers attempted to stop Mr. Longoria during a traffic stop, the complaint sets out facts that suggest Mr. Longoria rolled the windows up as the immigration officers approached.

Then after not complying with their request for him to roll the windows down, the officers proceeded to break the windows and then after that, Mr. Longoria fled from the incident and in the course of doing so, as alleged in the complaint, he -- his vehicle hit two officers.

So first, Your Honor, I certainly think the Government is entitled to the detention request based on serious risk of flight given that when the immigration officers attempted to detain and question Mr. Longoria, he fled from them.

Moving on, Your Honor, to whether or not conditions can be set, again Your Honor, I will note and make the same

arguments for a risk of flight, given that he has fled from -- he did flee from the officers.  In addition to that, Your Honor, he is not -- Mr. Longoria is not here in the United States legally.  He has, according to pretrial services report, family ties to Mexico and that he does also have family ties to the United States.  So I think that was probably a wash.

But given, Your Honor, both the flight from officers, as well as the alleged conduct in injuring the officers or sorry, in assaulting the officers, the Government is seeking detention and believes detention is warranted.

**THE COURT:**  Okay.  Do you have any information on the nature of the injuries, if any, sustained by the officers?  Because it wasn't really clear from the complaint.

**MR. BURLESON:**  Your Honor, I don't have anything beyond what's in the complaint.  And I misspoke, if I said injuries, I did say injuries, and corrected myself as to just the alleged assault.  I'm not aware of any injuries -- I'm not aware if the officers sustained any injuries.

**THE COURT:**  Okay.  So there's no proffer of any injury actually being sustained by the officers?

**MR. BURLESON:**  That's correct, Your Honor.  There may have been, I'm just not aware of any.

**THE COURT:**  Okay.  Yeah.  So for purposes of today, it didn't happen because it hasn't been proffered, so.

Let me ask you another question, you mentioned that

this started at -- you called it a traffic stop.  That's not what the complaint says.  Was this a traffic stop and what does that mean?  The complaint says, that immigration officials attempted to stop Mr. Longoria's vehicle to conduct an immigration check.  And I don't know what that is.

MR. BURLESON:  So, Your Honor, you're right in that it was not technically a traffic stop.  They -- it's my understanding again and again I apologize for misstating.  They were attempting to conduct a compliance check or a -- I have the information that's in the complaint, Your Honor, so I don't know of there being any -- traffic stop was an incorrect -- as the traffic stop being a term of art, I don't believe there was a traffic stop.

THE COURT:  Right.

MR. BURLESON:  They were attempting to interview or question Mr. Longoria and as I said, as they approached, that's when the windows were rolled up.

THE COURT:  Okay.  But then based on the complaint and I have the information you have, I don't see an allegation that there was an lawful basis to stop the vehicle.

MR. BURLESON:  May I have a moment, Your Honor?

(Pause)

THE COURT:  I mean, it just wasn't alleged.

MR. BURLESON:  That's correct, Your Honor, and again other than what's in the complaint, I don't have additional

information at this time.

THE COURT:  Okay.  Is there anything you want to say about Mr. Longoria's lack of criminal history?

MR. BURLESON:  Other than noting that I don't believe there is.

THE COURT:  Yes, and so that would weigh heavily in favor of bond is my --

MR. BURLESON:  So I think, Your Honor, the lack of criminal history would go to a danger to the community.  The Government is not seeking -- well, other than the alleged crimes, I do not think that necessarily the -- the nature of the crimes are alleged assault on federal officers, so there is some risk of danger to the community.  However, I do think the stronger argument here for the Government would be risk of flight.

THE COURT:  Okay.  Ms. Tamaz?

MS. TAMEZ:  Yes, Your Honor.  The Government has not established that it's entitled to a detention hearing in this case and we would request Mr. Longoria's release on his own recognizance.

Your Honor, the Government in order to be entitled to a detention hearing must show that this is a serious risk of flight in this case.  The Government points to the allegations in the complaint, however, first I'd point out that those are simply allegations at this point, for which he is presumed

innocent.

Second, as the Court itself has noted, there is no allegation in the complaint that there was a lawful basis for the stop, rather as you've seen in the video, included in the Government's own complaint, two unmarked vehicles with no emergency lights suddenly approach Mr. Longoria's truck, surrounded him, they presented no warrant. They did not have any indication of what law enforcement agency they were from and they then began battering his windows, breaking both the driver side window and the passenger side window.

**THE COURT:** Can I stop you there? There is an allegation in the complaint about some sort of emergency light or something. Let me find it.

It says that both Government vehicles activated their emergency equipment. I guess I would assuming it was a light. What do you understand?

**MS. TAMEZ:** From what I saw in the video, Your Honor, it just seemed like two white trucks drove up next to his vehicle.

**THE COURT:** Okay.

**MS. TAMEZ:** And if I'm misremembering, I apologize, but from my recollection of the video, it seems as though two vehicles not conducting any traffic stop just approached Mr. Longoria's truck.

**THE COURT:** So emergency equipment could have been

14

like a loud speaker or something, I don't know.  Okay.

MS. TAMEZ:  Yes, Your Honor.

So the allegation that he then fled from law enforcement does not support this argument that he poses a serious risk of flight, in light of the circumstances, in light of the fact that these vehicles with no warrant, with no clear indication of what agency they may be from, in light of the heightened community fear does not indicate that Mr. Longoria would pose a serious risk of flight such that he would intentionally avoid appearing in court.  And again whether -- the allegations in the complaint do not bear on whether or not he would return to court.

As to a risk of flight, Your Honor, I'd also note that there's approximately 30 community members present in the courtroom supporting Mr. Longoria.  These include his United States' citizen children, his cousins, his in-laws and multiple other community members here supporting him ensuring that his rights are preserved and also guaranteeing that he will return to address this matter to the Court.

So for those reasons, we don't believe the Government is entitled to a detention hearing.  However, if the Court were to find the Government is entitled to a detention hearing, again I would note this not a presumption case.  Liberty is the norm.  Pretrial detention is a carefully limited exception, again even when considering detention the first question is

whether personal recognizance or an unsecured bond is appropriate before getting into bond conditions.

Here, under the 3142(g) factors, Mr. Longoria has had ties to the United States for 23 years. He has been married for 24 years. He and his wife are both homeowners. They lived in this home that they own together for eight years. His name is on the property. He's filed taxes every year. The pretrial services report notes that he has a valid driver's license. They have three United States children who live with them and he's also gainfully employed in two jobs, at a warehouse in Bloomington and at a restaurant in Highland. And when he's not working there, he also is self-employed delivering party equipment.

As the Court has also noted, he has absolutely no criminal history, no -- not even any arrests or allegations of any conduct. So in this matter, it is appropriate, Your Honor, to set release on Mr. Longoria's own recognizance.

**THE COURT:** Okay. And if I were inclined to follow the recommendations of pretrial services, which is a $5,000 surety bond without justification, I know pretrial talked -- I don't know if Ms. Longoria is here.

**MS. TAMEZ:** His daughter, Your Honor, yes, she is.

**THE COURT:** Oh, is Ms. Longoria, the daughter, the $1,000 surety or is that his wife?

**MS. TAMEZ:** His daughter would be who we would

16

proffer as a surety, Your Honor.

THE COURT:  Oh, understood.  She's an adult.  How is she?

MS. TAMEZ:  Yes, Your Honor, she's 22.

THE COURT:  Okay.  Is she here?

MS. TAMEZ:  Yes, Your Honor.

THE COURT:  Do you mind if we chat for a second?  I always ask anyone who's going to be a surety to chat, I don't mean to single you out, but do you mind coming forward?

So I just want to chat since we're talking about having you potentially be a surety and I want to make sure you know what that is.  I'm sure you talked to Ms. Tamez, but I still want to talk to you.

So what we're talking about is potential release for your father and -- on certain conditions and in order him to motivate him to comply with those conditions we have a surety bond where you're basically agreeing to put up money.

The way an unjustified surety bond works is you don't actually have to pay the money up front.  You would only have to pay the money if your father violates the conditions of release.  So you don't have to have the money today, but if he violates the conditions of release, the Government can seek to take the money from you.  They can garnish your future wages, they can take assets of yours, they can wait ten years if they feel like it, when you finally have the money and take it then.

17

They can be very patient.

So it's a very serious commitment, but you don't have to have the money up front.  Does that make sense?

**MS. LONGORIA:**  Yes.

**THE COURT:**  Okay.  And so do you know what your father is accused of?  He is, of course, presumed innocent, but he is accused of a serious crime.  Do you know what the crime is?

**MS. LONGORIA:**  Yes.

**THE COURT:**  Okay.  And understanding all that, are you still willing to be a surety bond?

**MS. LONGORIA:**  Yes.

**THE COURT:**  Okay.  And if it needed to be $5,000 would you be willing to sign a bond for $5,000?

**MS. LONGORIA:**  Yes.

**THE COURT:**  Okay.  Thank you.  You can sit down.

Okay.  Well, so I will find that the Government is entitled to a detention hearing given the flight and serious allegations, though I am inclined to set bond given the lack of criminal history and the circumstances of the allegations.  You know, I'll note that the Government relies on this video as part of their evidence for the complaint, I watched the video and I frankly was confused, and you know, the video is from Mr. Longoria's perspective.  From his perspective, it's quite scary and anyway, it's hard to tell what's going on from his

18

perspective.

So under the circumstance I am inclined to set bond. Mr. Burleson, any -- do you have any -- would the Government like any additional bond, any other conditions of bond that aren't proposed by pretrial services?

**MR. BURLESON:** No, Your Honor.

**THE COURT:** Okay. So, Mr. Longoria, this is apparently an ICE detainer on you. So I'm going to set conditions of bond and I should say for the family and friends as well, I suppose it's very likely that you're not released, the Government has the right to exercise that detainer. And they could seek to remove you immediately. The circumstances here are not the same as some of our other cases, so I don't know what they'll do, but all I can do is set bond. I think you're entitled to it. So I'll do that, but the Government is then entitled to do what it wants to do and it may choose not to release you.

So I'm going to set the conditions as set forth in the pretrial services verbatim, so we don't need to go through all of them. But if your daughter signs the surety bond today, is there a passport that needs to be surrendered, Ms. Tamez?

**MS. TAMEZ:** Your Honor, I'd rather not comment as to the record.

**THE COURT:** Okay. I was just going to set a deadline.

19

**MS. TAMEZ:** Yes, please, Your Honor.

**THE COURT:** Okay. Here's what I'll do. I'll set -- I won't require that for release on bond. I'll give you a two week deadline. So what's two weeks from today?

**THE CLERK:** September 11th.

**THE COURT:** Okay. So by September 11th that would need to be either an affidavit that you don't have a passport or you need to surrender the passport by 9/11, but I'm not going to require that in order for him to be released on bond. I'm only going to require the daughter to sign the $5,000 affidavit of surety. And so if that happens, and then if he's deported, then the passport thing just doesn't matter.

**MS. TAMEZ:** Yes, Your Honor.

**THE COURT:** But if he is released and he remains on bond, then he needs to surrender that.

**MS. TAMEZ:** Yes, Your Honor.

**THE COURT:** Okay. Anything else from the parties? Any questions?

**MR. BURLESON:** Not from the Government, Your Honor.

**MS. TAMEZ:** Your Honor, if the Court is willing, given the ICE hold, I would ask if Mr. Longoria would be able to hug his children who are present.

**THE COURT:** How many children are there?

**MS. TAMEZ:** I believe two of his children are present.

20

**THE COURT:** It's fine with me, if the marshals are okay with it.  Or maybe, marshals, if you want to talk to the children and just make sure they're not, you know, not sneaking anything to him, that kind of thing.

**THE MARSHAL:** Yeah, that's fine.

**THE COURT:** Okay.  So maybe we can get some of the folks to start clearing out of the courtroom to give Mr. Longoria space and safety with the marshals that would probably help.

**MS. TAMEZ:** Yes, Your Honor.

**THE COURT:** So good luck to you, Mr. Longoria, I don't know what's going to happen next, but I wish you good luck.

**THE DEFENDANT:** Thank you very much.

**THE CLERK:** You have a question?

**THE COURT:** Yeah, I'm sorry?

**MR. CRYER:** Just for clarification, for the passport commission on this (inaudible) that is checked off, but he has to surrender it so that (inaudible).

**THE COURT:** So he has to surrender it by 9/11.  He can be released before it's surrendered.  Yeah.

**MR. CRYER:** And it's forthwith, right?

**THE COURT:** Forthwith, yes.  The only condition before release is the surety bond.

**MR. CRYER:** Okay.  Thank you, Your Honor.

21

(Proceedings concluded at 3:46 p.m.)

\* \* \* \* \*


CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    September 8, 2025

        Signed                                      Dated



*TONI HUDSON, TRANSCRIBER*

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

# EXHIBIT "B"

COMPLAINT FOR DAMAGES

**From:** Helen Tran on behalf of Helen Tran <Tran_He@sbcity.org>
**To:** boris.medzhibovsky@mail.house.gov
**Subject:** Fw: USCBP/ICE Involved Shooting in San Bernardino
**Date:** Saturday, August 16, 2025 12:08:38 PM

---

**Helen Tran**
Mayor
Office of the Mayor
City of San Bernardino
290 North "D" Street
San Bernardino, California 92401
Office: 909.384.5133
Cell: 909.649.6526

Tran_he@sbcity.org | www.sbcity.org

The information in this email and any attachments are for the sole use of the intended recipient and may contain privileged and confidential information.  If you are not the intended recipient, any use, disclosure, copying or distribution of this message or attachment is strictly prohibited.  If you believe that you have received this email in error, please contact the sender immediately and delete the email and all of its attachments.

**From:** Eric Levitt <Levitt_Er@sbcity.org>
**Sent:** Saturday, August 16, 2025 11:57:07 AM
**To:** Eric Levitt <Levitt_Er@sbcity.org>; Tanya Romo <Romo_Ta@sbcity.org>; Darren Goodman <Goodman_Darren@sbcity.org>
**Subject:** USCBP/ICE Involved Shooting in San Bernardino

Mayor Tran & City Council Members,

I received the below from Chief Goodman and wanted to make you aware.

Eric Levitt
City Manager

On 8-16-25, at about 0851 hours, two US Customs Border Patrol agents and two ICE agents conducted a traffic stop on a known illegal immigrant. The suspect was uncooperative and fled in his vehicle. The agent's original statement was that the truck drove towards him, and he thought the truck was trying to strike him. The Customs Border patrol agent fired 3 rounds at the vehicle striking the truck. No people were struck by gunfire.

At 0921, the suspect called and said that masked men tried to stop him, and he did not know who they were, so he fled. The suspect stated that he would like contact at his house located at 1030 N Mt. View, which we did.  The FBI was called to investigate the OIS. The San Bernardino Police Department is not involved in the investigation.

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

# EXHIBIT "C"

**https://www.dropbox.com/scl/fo/p20bhezf19o887vr81l33/AJiFIfuhJOSS7EVJN G6tTLE?rlkey=sl5jjsd5rb2o9exezrlpo69s0&st=iz4zmryl&dl=0**

COMPLAINT FOR DAMAGES

THE SIMON LAW GROUP, LLP
2916 W. 164th Street
Torrance, CA 90504
Tel: 310-914-5400 – Fax: 310-914-5401

# EXHIBIT "D"

**https://www.dropbox.com/scl/fo/p20bhezf19o887vr81l33/AJiFIfuhJOSS7EVJN
G6tTLE?rlkey=sl5jjsd5rb2o9exezrlpo69s0&st=iz4zmryl&dl=0**

COMPLAINT FOR DAMAGES

# EXHIBIT "E"

BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
SONAH LEE (Cal. Bar No. 246024)
Assistant United States Attorney
Riverside Office
    3403 Tenth Street, Suite 200
    Riverside, California 92501
    Telephone:  (951) 276-6924
    Facsimile:  (951) 276-6202
    Email:      sonah.lee@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>           v.<br><br>FRANCISCO JAVIER LONGORIA,<br><br>      Defendant. | No. ED 25-MJ-00533-DUTY<br><br>[PROPOSED] ORDER TO DISMISS COMPLAINT WITHOUT PREJUDICE PURSUANT TO RULE 48(a) |

The Court has read and considered the government's motion to dismiss the complaint without prejudice pursuant to Federal Rule of Criminal Procedure 48(a).  The Court finds that there is good cause to dismiss the complaint in the interests of justice.

//

//

//

//

//

//

//

Accordingly, IT IS HEREBY ORDERED that the complaint is dismissed without prejudice against defendant in the interest of justice.  Defendant's bond shall be exonerated and any terms and conditions of pretrial release shall be terminated.

IT IS SO ORDERED.


_09/17/2025_                                  _____

DATE                                     UNITED STATES MAGISTRATE JUDGE


Presented by:

___/s/_____
SONAH LEE
Assistant United States Attorney